[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from the judgment of the Huron County Court of Common Pleas granting the motion for summary judgment filed by appellee, David Williams, and dismissing appellants' complaint with prejudice. For the reasons that follow, we affirm the judgment of the trial court.
The undisputed facts are as follows. On October 21, 1994, appellant, Myron Keller, was a salesman for Restlawn Memorial Park. Mr. Keller had an appointment with appellee and went to his home. When appellee held the door open, Keller attempted to enter. In order to prevent Keller from entering, appellee grabbed Keller and spun him around toward the steps of the porch. Keller allegedly sustained injuries as a result of this contact with appellee.
On October 18, 1996, Keller filed a complaint against appellee alleging negligence. Keller's wife filed for loss of consortium. In his answer, appellee asserted that appellants' claims were time-barred by the applicable statute of limitations. On April 21, 1997, appellee filed a motion for summary judgment asserting that Keller's cause of action was really assault and battery, not negligence. As such, appellee argued that the complaint was time-barred, having been filed after the one-year statute of limitations for assault and battery, as set forth in R.C. 2305.111. In support of summary judgment, appellee offered the deposition testimony of Keller.
Keller testified in his deposition that a telemarketer had set up an appointment with appellee to receive a presentation regarding burial services. Keller testified that he arrived at appellee's home and appellee was already at the door. Keller testified that he said, "I'm Marv Keller from Restlawn Memorial Park" and that he was there for the appointment. Keller then testified that appellee opened the storm door. Keller stated that he began to enter appellee's home when he grabbed Keller in the right shoulder area:
 "I took about a half a step in and [appellee] grabbed my arm and retched me around, and all at once my head was headed for the steps and I came down on my right foot * * *"
Keller further testified as follows:
"Q. Okay. Now, did you consent to him grabbing you?
"A. No, Sir.
 "Q. This was contact, I take it, that you did not intend or want.
 "A. Definitely. I — I've had prior, you know stress-related injuries to my neck because I work in an intense job situation, and you know, he reinjured that.
 "Q. So you found this to be aggressive, unwanted behavior on his part?
"A. Yes.
"Q. And he grabbed you by the right arm and shoulder?
"A. Yes.
"Q. And he physically turned you around —
"A. Yes.
 "Q. — back away from the house, and this is while you were standing —
"A. Towards the steps.
 "Q. And that's while you were standing on the steps — or on the upper part of the steps?
"A. I was on the porch.
"Q. You were on the porch?
"A. And he — and he aimed me towards the steps.
 "Q. Okay. So in other words, he was pushing you off this —
"A. Yes.
"Q. — porch?
"A. Yes.
 "Q. And in other words, he wanted you to go down the steps and away?
"A. Yes.
 "Q. And you did not consent to him touching you or grabbing you in that manner?
"A. I did not, sir.
"* * *
 "Q. Okay. Now, it's my understanding that there was very little dialogue between the two of you.
"A. Right.
 "Q. You simply told him that you were here for your appointment?
"A. Yes.
 "Q. He grabbed you and more or less threw you off the porch?
"A. Right.
 "Q. And then he said, `You can give me my free certificate from out there'?
"A. Uh-huh."
Appellee testified in his deposition that, although he knew someone was coming out to his house to give him a free cemetery plot which he had won, he did not want to receive a sales pitch, nor did he know a salesman was coming. When Keller arrived, appellee was standing on the threshold of his front door and Keller was just outside. Appellee testified that the following exchange occurred:
 "[Keller] said, `I'm here to explain estate planning, and could I come in?' I said, `No.' He said, `You're kidding.' I said, `No, I'm not kidding.'
 "I said, `Where is my free gift?' And he just kind of smirked, smiled, smirked. Didn't say nothing. * * *
 "* * * Then he actually started to come forward like he was going to come into my house. He was very determined that he was going to get in my home, and I was determined that I didn't want him in my home.
 "And at that point, I reached out, I think it was with my right hand, to his shoulder, and I actually grabbed — all I got was this big thick cottony pad on his suit coat — and turned him some and said, `Hit the road, Jack.'
 "He never lost his posture, never fell, never dropped his briefcase or anything. I wasn't angry to the point where I was screaming or hollering or swearing. And he turned and walked down the steps, and I was still in my home, I hadn't stepped out on the porch or anything. And I stood and I said, `And there is a no peddlers sign by my door.'"
Appellants filed a memorandum in opposition on May 14, 1997, asserting that Mr. Keller gave actual and implied consent to the contact and, therefore, it was not assault and battery. In support of this argument, appellants provided Keller's affidavit, which stated in pertinent part:
 "4. As a salesman, it is my job to try to get my foot in the door.
 "5. I was under the mistaken belief that Mr. Williams was inviting me into the house at the time of my sales pitch because Mr. Williams held the door open.
 "6. Mr. Williams and any other potential customers have the right to keep me out of their house if they do not want me in.
 "7. I fully consent to Mr. Williams or any other potential customer using their hands to keep me out of their house if I am not welcome in their house.
 "8. I do not believe that Mr. Williams used proper care when he grabbed me and clearly he did not intend to injury [sic] me.
 "9. I was not attempting to give a legal conclusion when I testified that I did not consent to Mr. Williams touching me. Instead, I was saying that I certainly did not consent to being injured.
 "10. I believe that Mr. Williams did not use ordinary care in keeping me out of his house.
 "11. Mr. Williams never threw me off of the porch but, I was injured. Defendant Williams did not intend to injure me, however, I do consent to him or any customer touching me if they do not want me in the house."
The trial court granted appellee's motion on June 4, 1997, and held:
 "The Court finds that based on the deposition testimony of Plaintiff Myron Keller, Defendant's conduct constituted an assault and battery and Plaintiffs' Complaint is therefore barred by the statute of limitations set forth in R.C. 2305.11. Love v. Port Clinton (1988), 37 Ohio St.3d 98. A rose by any other name is still a rose.
 "The Court finds that Plaintiff Myron Keller's affidavit does not create a genuine issue of material fact. Williams v. 312 Walnut Limited Partnership, 12-31-96, Hamilton County Court of Appeals No. C-960368, unreported, 1996 Ohio App. LEXUS [sic] 5887."
Appellants assert the following sole assignment of error:
 "THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WHERE REASONABLE MINDS COULD CONCLUDE, DEFENDANT'S ACTIONS WERE NEGLIGENT AND NOT INTENTIONAL. (JUDGMENT ENTRY)."
This court notes at the outset that in reviewing a summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127,129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
The actual nature of the case determines the appropriate statute of limitations period rather than the form in which the action is pleaded:
 "`* * * [I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded. The grounds for bringing the action are the determinative factors, the form is immaterial.'"
Love v. Port Clinton (1988), 37 Ohio St.3d 98, 99, citingHambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 183. "A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results." Love at 99. Offensive contact is contact which is offensive to a reasonable sense of personal dignity. Id. The Supreme Court went on to state:
 "Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence. We agree with the court in Grimm v. White (1980), 70 Ohio App.2d 201, 203 * * *, which recognized that: `* * * [T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done.' See, also, Arend v. Mylander (1931), 39 Ohio App. 277 * * *." Id. at 99-100.
Appellants attempt to distinguish Love from the facts in this case, arguing that "[p]lacing your hand on an invitee's shoulder to keep him from entering your house, does not constitute contact which rises to a level where it offends the dignity of any person." Additionally, appellants argue that no action can be brought for assault and battery where the injured party gave implied or express consent to the physical contact that caused the injuries. Appellant cites Doe v. White (1994), 97 Ohio App.3d 585, wherein the court found that no battery occurred since the contact was consensual sexual intercourse.
We find that appellee's intentional action of grabbing Keller and spinning him around to prevent him from entering appellee's home and eject him from the porch created a potential cause of action for assault and battery. The contact was offensive to a reasonable sense of personal dignity. See Love,supra.
Moreover, we find appellants' assertions that Keller consented to the contact to be without merit. Even assuming Keller's affidavit to be true and accurate, Keller has nevertheless failed to create a genuine issue of material fact regarding whether appellee's actions created a claim for assault and battery or were merely negligent. In Love, the Ohio Supreme Court held that a person is liable for battery when he acts with intent to cause a harmful or offensive contact and such contact results, unless a person is privileged in such contact. In Doe, the court found that no battery occurred since the contact in that case was consensual intercourse and, therefore, privileged. The sexual contact in Doe, however, was not an offensive contact in and of itself, the plaintiff was not assaulted by the defendant when he had sex with her. The action in Doe arose because a sexual encounter between a counselor and client at the counselor's suggestion, while the client is in a fragile mental state, causes a great probability of substantial harm to the client and is, therefore, negligent.
In this case, however, appellee's grabbing of Keller constituted offensive contact. It was not consensual touching that became offensive because Keller was injured, it was intentional, aggressive, grabbing and spinning done with the purpose of ejecting Keller from the premises. Keller did not state in his affidavit that he consented to this manner of touch. We simply do not find that Keller's statement, that he consents to being touched by customers, turns appellee's action into one of negligence.
Since appellee's actions created a potential cause of action for assault and battery, not negligence, Keller is barred by the applicable one-year statute of limitations. Accordingly, appellants' sole assignment of error is found not well-taken.
On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Huron Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _______________________________ George M. Glasser, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.